IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ROBERT M. JANES,

        Plaintiff,

vs.                                                                                                             No. CIV 01-625 LFG/LCS

POINT WEST CAPITAL CORPORATION,
BRADLEY N. ROTTER, JOHN WARD ROTTER,
and ALAN B. PERPER,

        Defendants.


**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS**


THIS MATTER comes before the Court on Defendants' Motion to Dismiss the First Amended Complaint Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, or, Alternatively, to Compel Arbitration [Doc. 6]. In accord with local rules, the motion, response and reply were filed as a package. No oral argument is necessary; the motion may be decided on the briefs. The Court grants the motion to dismiss, as Plaintiff's claims are subject to arbitration and should be presented in the arbitration proceedings currently underway in Reno, Nevada.

**Factual and Procedural Background**

Plaintiff Robert M. Janes ("Janes") alleges that, in connection with his termination from a position with SocietyPool.com ("SPC"), a corporation which is not a party to this action, the Defendants committed various tortious acts against him. He originally sued in New Mexico state court, and the case was thereafter removed to this Court. Defendants now seek to have the action

dismissed, alleging lack of personal jurisdiction and failure to adequately state claims for intentional interference with contract, defamation and civil conspiracy; alternatively, Defendants argue that all claims should be submitted to arbitration.

Defendant Point West Capital Corporation ("PWCC") is the Manager and majority shareholder in SPC, the company which previously employed Janes. The individual Defendants are officers of PWCC. SPC was formed as a limited liability company on May 10, 2000, pursuant to a document entitled Limited Liability Company Agreement of SocietyPool.com, LLC (the "Operating Agreement"). This document contains an arbitration provision, under which the parties agree that any controversy or claim "arising out of or relating to this agreement" would be submitted to binding arbitration upon request of any party. Under the Operating Agreement, PWCC put up all of the initial capital contribution for SPC, was named Manager of SPC, and acquired 51 per cent of voting and economic interests in SPC. The Operating Agreement also named Janes as Assistant Secretary and Special Consultant to SPC, subject to the terms of "the Janes Employment Agreement," a separate document.

The Janes Employment Agreement was also signed on May 10, 2000. The signatories to this agreement were Janes and SPC. The signature line lists SPC "By: Point West Capital Corporation [*i.e.*, PWCC], a Delaware corporation; Title: Manager," and is signed by Alan B. Perper as President of PWCC. This agreement sets forth the terms of hiring and termination of Janes's executive position and also contains an arbitration provision, reading as follows:

> Any controversy or claim between the parties hereto arising out of or relating to this agreement or the transactions contemplated hereby, including, without limitation, the construction or application of any of the terms, convenants, or conditions of this agreement, shall, on written request of one party served upon the other, be submitted to

> final and binding arbitration governed by the commercial arbitration
> rules of the American Arbitration Association . . . Arbitration shall be
> the exclusive remedy of each of the parties hereunder and any award
> of the arbitrator(s) shall be final and binding upon the parties hereto.

Defendants contend that "[i]mmediately following the formation of SPC and PWCC's $1.7 million contribution, Janes and Kahn began attempting to usurp PWCC's exclusive authority as SPC's Manager to manage SPC's affairs." (Defendants' Memorandum in Support of Motion to Dismiss or Compel Arbitration [Doc. 7], at 4). In particular, Defendants allege that Janes misused his position with the company by submitting a "sham" Management Report, which triggered PWCC's option to contribute another $1 million in capital to SPC, and that after SPC made the additional contribution, Janes and his business partner falsely asserted that the contribution was untimely and thereupon appointed themselves as SPC's officers and managers. Defendants state that, because of these acts of insubordination and disloyalty, "it was determined in San Francisco that Janes's employment with SPC should be terminated," and "[o]n SPC's behalf, PWCC sent a letter to Janes from San Francisco on August 10, 2000 notifying him that he had been terminated." (Doc. 7, at 6).

Janes filed this present suit on April 3, 2001. Approximately one month later, he filed a second wrongful termination claim against SPC with the American Arbitration Association, pursuant to the arbitration clause in the Janes Employment Agreement. That arbitration is currently pending in Reno, Nevada. Janes alleges in this lawsuit that he was terminated from his employment with SPC without notice, without cause, and in violation of his employment agreement. He contends that the Defendants "fired [him] and caused the wrongful termination of the Janes Employment Agreement" in order to eliminate his stock option rights, to "financially disadvantage" him so as to impede any possible litigation efforts, to eliminate his bonus payment, to avoid further capital calls, and to "further

distance Point West [PWCC] and the Officers from Janes' honest but disliked scrutiny of the misconduct of SPC affairs by Point West."

## Discussion

Janes contends that the claims involved in this suit are not subject to arbitration, for two reasons. First, Janes argues that this case does not entail a breach of contract claim but rather involves causes of action sounding in tort, so that arbitration under the contract is not applicable. Secondly, he contends that the arbitration provision is not available to these Defendants, because they were not parties to the Janes Employment Agreement which contains the arbitration clause. Neither of these grounds is sufficient to avoid arbitration.

A. <u>Tort vs. Contract Claims</u>.

Janes alleges three causes of action in his complaint, all based on tort concepts. The first is a claim for intentional interference with contract, under which he alleges that PWCC misused its position as SPC's manager to wrongfully terminate his employment contract, and that PWCC and the individual Defendants, as officers of PWCC, made the false claim that they terminated Janes's contract because he issued an unauthorized Management Report. The second cause of action is for defamation. In this claim, Janes asserts that PWCC and the individual Defendants publicized that he was fired "for cause," when they knew this information was false. In the third claim, Janes alleges a civil conspiracy, asserting that he has suffered damage as a result of a deliberately wrongful plan or scheme by PWCC and each of the individual Defendants, acting in concert, to deprive Janes of the benefit of his employment contract.

Janes argues that Defendants attempt to equate his tort claims to contract claims, in order to force him into arbitration. Defendants, on the other hand, contend that Janes cannot avoid his

4

obligation to arbitrate claims arising from his termination, merely by casting them in tort rather than in contract. The Court agrees that, because Janes's claims basically arise from circumstances surrounding termination of his employment and are inextricably intertwined with his claims of contract violation (now being arbitrated in Nevada), this case should be dismissed and the claims brought in the arbitration proceeding.

There is a strong federal policy in favor of arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983); *see also*, Hart v. Orion Ins. Co., 453 F.2d 1358, 1360 (10th Cir. 1971) (noting the "overriding federal policy favoring arbitration"). The Federal Arbitration Act provides that written arbitration agreements in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable." 9 U.S.C. §§ 2.[1]

The arbitration provision in the employment contract, which Janes signed, is extremely broad, encompassing any claim "arising out of or relating to this agreement or the transactions contemplated hereby." Broad language such as the phrase "arising out of" has consistently been held by the federal courts to require arbitration of claims, even those couched in tort concepts, if the claims "involve significant aspects of the employment relationship." Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163, 1167 (8th Cir. 1984) ("Arbitration cannot be made dependent on the simple characterization of a dispute as a tort or contract claim").

This principle, that arbitrability cannot be dictated by the manner in which the plaintiff drafts his complaint, has been echoed in numerous cases. *See, e.g.*, Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993) ("Arguably, the eleven counterclaims [including,

---

[1]Plaintiff does not dispute that the employment contract herein involves interstate commerce.

*inter alia,* tortious interference with contract and civil conspiracy] ... sound in tort.  However, it is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract"); Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 384 (11th Cir. 1996) ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegation in the complaint rather than the legal causes of action asserted"); Zolezzi v. Dean Witter Reynolds, Inc., 789 F.2d 1447, 1449 (9th Cir. 1986) (involving defamation allegations; "tort claims are within the scope of arbitration agreements and ... express exclusion of tort claims in a broadly worded arbitration agreement is required"); Hughes Masonry Co. v. Greater Clark County School Bldg. Corp., 659 F.2d 836, 841 n.9 (7th Cir. 1981) ("The outcome urged by Hughes would have the tail wagging the dog, since it would allow a party to defeat an otherwise valid arbitration clause simply by alleging that ... the party seeking arbitration has ... committed a tort that is ... integrally related to the subject of the arbitration"); Sweet Dreams Unlimited, Inc. v. Dial-a-Mattress Int'l, Ltd., 1 F.3d 639, 643 (7th Cir. 1993) ("a party may not avoid a contractual arbitration clause merely by 'casting its complaint in tort'"); J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315 (4th Cir. 1988) (involving a claim of civil conspiracy; "The recommended clause does not limit arbitration to the literal interpretation or performance of the contract.  It embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute"); American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 94 (4th Cir. 1996) (where a claim of tortious interference with contractual relations clearly relates to the agreement containing the arbitration clause, the claim is referable to arbitration).  Long v. Silver, 248 F.3d 309 (4th Cir. 2001) (where a civil conspiracy claim is significantly related to the contract containing the arbitration agreement, the claim is arbitrable).

In P & P Industries, Inc. v. Sutter Corp., 179 F.3d 861, (10th Cir. 1999), the Tenth Circuit held that a claim of tortious interference with an employment contract is "related to" or "arises out of" the contract, and therefore, the claim is arbitrable:

> [A]ll claims with a significant relationship to the Agreement, regardless of the label attached to them, arise out of and are related to the Agreement . . . We agree with the District Court, and with Sutter [the party wishing to arbitrate] that the tort-based claims alleged by P & P arise out of, or relate to, the Agreement itself. As the District Court succinctly stated, 'P & P's allegations of improper conduct by Sutter are limited to actions taken in connection with Sutter's decision to terminate the Agreement. The purported interference with P & P's contracts with its employees ... is based solely on the actions of Sutter at the time it terminated the Agreement. These contentions each relate to the primary claim that Sutter breached the agreement by terminating it. It is the manner in which that termination occurred that forms the basis for the additional causes of actions. Therefore, these causes of action are related to the claim which is expressly subject to arbitration.' [Internal punctuation omitted].

In the present case, too, the claims of tortious interference with contract, as well as the claims of defamation and civil conspiracy, involve "the manner in which Janes was terminated," and thus fall within the broad language in the arbitration clause which reads, "any claim or controversy . . . arising out of or relating to this agreement or the transactions contemplated hereby." Janes alleges in his complaint that he negotiated the employment contract with PWCC and the individual Defendants, and that the terms thus negotiated were then approved by SPC and Janes. (Complaint, ¶ 16). The employment agreement was not signed by all Defendants, but it was executed by PWCC, on behalf of SPC, under the signature of Defendant Alan B. Perper as President of PWCC. Janes alleges further that PWCC and the individual Defendants "were each fully aware of the provisions of the Janes Employment Agreement and of the negotiations leading to the approval of the Janes Employment Agreement." (Complaint, ¶ 18).

7

He also alleges, essentially, that the Defendants in this action were responsible for his termination. He states that PWCC, "under the signature of [Defendant] Perper, mailed a letter dated August 10, 2000, to Janes at his Albuquerque home office said letter giving notice that Point West [PWCC], allegedly acting on behalf of SPC, had fired Janes and terminated the Janes Employment Agreement." (Complaint, ¶ 35). He further alleges that he was fired in violation of the Janes Employment Agreement, that "[e]ach of the Officers [*i.e.,* the individual Defendants] participated in recommending and making the decision to terminate Janes' employment with SPC," and that PWCC and the individual Defendants "violated the Janes Employment Agreement by terminating the Janes Employment Agreement without 'cause' and contrary to the express terms and provisions of the Janes Employment Agreement." (Complaint, ¶¶ 37, 38, 43).

Under the cause of action for intentional interference with contract, Janes alleges that PWCC "abused its position as SPC's Manager, with the knowledge of and at the direction of" the individual Defendants, "to wrongfully terminate the Janes Employment Agreement." This claim is, in essence, a claim for breach of contract, regardless of the tort label. At the very least, it has a "significant relationship" to the employment agreement and is therefore arbitrable, under the authorities quoted above.

The claim for defamation includes allegations that PWCC and the individual Defendants falsely publicized that Janes was fired for cause. If it is determined in the arbitration proceedings that there was no breach of contract because Janes's termination was justified, this defamation claim will necessarily fail. For reasons of judicial economy, therefore, and because the claim is intimately bound up with the employment agreement in that "resolution of this [defamation] claim depends upon evaluation of a party's performance ... during the time of the contractual relationship," Zolezzi, at

1450, the defamation claim, too, is referable to arbitration. *See also*, Morgan, at 1167, in which a claim that a former employer misinformed the firm's customers that an employee had been suspended was held to be "significantly related" to the plaintiff's employment and therefore arbitrable, since "a primary factor in resolving these claims is truth of the statements."

The civil conspiracy claim is vaguely worded. It states, "[t]he damages suffered by Janes are a result of a deliberate, wrongful and malicious plan or scheme put into action by Point West and each of the Officers, said Defendants acting in concert . . . for the purpose of obtaining private benefits for the respective Defendants wrongfully at Janes' expense." (Complaint, ¶ 81). This claim appears to be based on the intentional interference with contract and defamation claims that came before it, and for the reasons given above in connection with those claims, it, too, must be referred to arbitration.

The tort claims alleged by Janes all relate to the manner in which his termination occurred, and thus have a "significant relationship" to the employment agreement containing the arbitration clause. All of these claims must therefore be arbitrated. As the Eleventh Circuit noted in McBro Planning & Development Co. v. Triangle Electrical Construction Co., 741 F.2d 342, 343-44 (11th Cir. 1984):

> This is not a simple tort case where, for example, Mr. McBro might have committed a battery against Mr. Triangle and there could be no question of the inappropriateness of arbitration arising from a clause in unrelated construction contracts. Moreover, it is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract.

B.  Arbitration Clause as Binding Non-Signatories.

Janes also argues that the arbitration clause is not applicable to this action because the contract in which it appears was not signed by the Defendants in this case. As concerns Defendant

9

PWCC, this assertion is simply wrong. PWCC executed the Janes Employment Agreement on behalf of SPC, under the signature of Defendant Perper, as President of PWCC. In any case, even if PWCC were not considered to be a signatory, PWCC and SPC stand in such a relation to each other that it is appropriate to arbitrate disputes between Janes and PWCC that are grounded in the Janes Employment Agreement. This principle has been applied to the parent-subsidiary relationship and is equally applicable here: "When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." J.J. Ryan, *supra*, at 320-21.

It is true that Defendant Perper did not sign in his individual capacity, and that the other individual Defendants, Bradley N. Rotter and Ward Rotter, did not sign the Agreement at all. However, these facts do not compel the dispute into court and out of arbitration. A party may be equitably estopped from asserting that the lack of a written arbitration agreement between the parties precludes arbitration. Sunkist, *supra,* at 757:

> The *McBro* court noted the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract, and decided that the claims were 'intimately founded in and intertwined with the underlying contract obligations.'

Where "the very basis" of a plaintiff's claim is that a defendant breached the duties and responsibilities assigned to it by the agreement containing the arbitration clause, that claim is arbitrable. Hughes Masonry, *supra*, at 838. It would be "manifestly inequitable" to permit a plaintiff to both claim that a defendant failed to perform duties under a contract and therefore "intentionally interfered" with that contract, while at the same time denying that the defendant is a party to the

10

contract in order to avoid arbitration of "claims clearly within the ambit of the arbitration clause."

Id., at 839.

> A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract . . . [W]e see little difference between a parent and its subsidiary and a corporation and its shareholders, where, as here, the shareholders are all officers and members of the Board of Directors and, as the only shareholders, control all of the activities of the corporation . . . [T]he facts and claims against the Corporation and its shareholders are so closely intertwined that Long's claims against the non-signatory shareholders of the Corporation are properly referable to arbitration even though the shareholders are not formal parties to the 1972 Agreement.

Long, *supra*, at 7-8.

Janes alleges that the individual Defendants in the present case are "founding shareholders" and officers of PWCC and that collectively, the three individuals control the single largest block of PWCC stock and effectively "control the outcome of votes actually taken by Point West's shareholders for all times pertinent to this action." (Complaint, ¶¶ 3-7). He further alleges that these three individuals "constitute the total membership of Point West's Board of Directors" and that they "have controlled the actions of Point West's Board of Directors for all times pertinent to this action." (Complaint, ¶ 10). As noted above, PWCC (Point West) was the Manager of SPC and owned a 51% economic and voting interest in SPC. (Complaint, ¶ 25).

Janes makes no individualized factual claims against any of the three Defendants but rather refers to them collectively as "the Officers" and alleges generally that they "fired Janes and caused the wrongful termination of the Janes Employment Agreement," tortiously interfered with his contractual relations, defamed him by stating that he was terminated for cause, and engaged in a civil conspiracy against him before and after termination of the employment agreement. These claims are

11

closely intertwined with Janes's wrongful termination claim currently being arbitrated against SPC, the company on whose behalf PWCC served as Manager and on whose behalf PWCC, through its President Perper, signed the Janes Employment Agreement. Janes agreed to submit to arbitration all disputes arising under or relating to the employment contract. The Court finds that he is estopped from asserting that Defendants herein are not subject to the arbitration provision, in light of his own allegations that PWCC and the individual Defendants were intimately involved in negotiating and terminating the Janes Employment Agreement.

    C.  Defendants' Remedies.

The Tenth Circuit has held that, due to the mandatory language of the Federal Arbitration Act, 9 U.S.C. § 3, it is error for the District Court to dismiss a case rather than order a stay of judicial proceedings pending arbitration, when one of the parties requests a stay. Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994). However, if the request is for dismissal rather than a stay, the Court may order that the case be dismissed with prejudice. Armijo v. Prudential Ins. Co. of America, 72 F.3d 793, 797 (10th Cir. 1995). *See also*, Klocek v. Gateway, Inc., 104 F. Supp. 2d 1332, 1335-35 (D. Kan. 2000), citing cases holding dismissal appropriate if all issues raised before the court are arbitrable.

In the present case, Defendants have asked that the case be dismissed with prejudice or, alternatively, compelled to arbitration. Defendants do state briefly in a footnote that, if the Court is not inclined to compel arbitration of these claims, it should "at a minimum" stay the action pending outcome of the arbitration proceedings. (Doc. 7, n.19, at 23-24). This mention of a stay as an alternative solution is not the primary thrust of Defendants' motion. The Court finds that dismissal, which is the relief requested by Defendants, is a more appropriate and efficient resolution.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or, Alternatively, to Compel Arbitration [Doc. 6] is granted, and this action is dismissed with prejudice.

_____
Lorenzo F. Garcia
United States Magistrate Judge